## No. 11,069.

## C. V. THIBAUT, SHERIFF AND EX-OFFICIO TAX COLLECTOR, VS. JOSEPH P. KEARNEY.

A planter or farmer keeping a store on his plantation, and selling goods and liquors to his employees exclusively, falls under the terms of the law exacting a license from every one " doing a business of selling at retail."

APPEAL from the Twenty-second District Court, Parish of Plaquemines. *Livaudais, J.*

*Robert Hingle* for Plaintiff and Appellee.

*Gibson & Hall* and *R. L. Tullis* for Defendant and Appellant:

A planter who keeps such articles of merchandise only as are needed by laborers on his plantation, and sells them only to those laborers and not to the general public, is not a retail dealer within the meaning of the revenue act, and hence is not subject to the license or tax imposed on retail dealers, and liquors so sold in connection therewith do not render such planter liable to a license as liquor dealer under Act 150 of 1890. 30 An. 972, Luling vs. Labranche, Tax Collector; 37 An. 902, Thibaut vs. Diamond; 42 An. 9, City of New Orleans vs. Clark & Meader.

Where no license is provided in the Revenue Act 150 of 1890 for a planter so supplying his own hands only, none is due, as it is omitted, and the courts can not read into a law what is not affirmatively there. 43 An. 959, Barnard, Sheriff, vs. Gall & Pharr.

The neglect or failure of one party to prove what is essential to his recovery is not cured by the evidence of the other leaving the fact doubtful, more especially when the evidence is known to be in possession of a witness that is examined by counsel for all parties litigant, and there should be judgment for defendant. 17 An. 294, Briggs vs. Simonds; 18 An. 116, Kearney, Blois & Co. vs. Hauché; 22 An. 377, Jackson & Anderson vs. Beling.

The opinion of the court was delivered by

NICHOLLS, C. J. On a rule taken by plaintiff against the defendant the latter was " condemned to pay $105 with 5 per cent. on said amount for lawyer's fees and all costs " for a license carrying on business as retail merchant and liquor dealer. The defendant in answer to the rule pleaded the general issue, and denied specially that he was a retail merchant owing a license. He avers that he keeps a store on his plantation, in which are sold only such goods and merchandise as are needed on his plantation, and that he makes no sales to the general public, or to persons other than his laborers

on the plantation. That defendant being engaged in agriculture is otherwise exempt from license taxation by the Constitution of this State and that of the United States.

On trial of the case plaintiff testified that defendant is the owner of the Belle Chasse plantation; that he knows that he carries on the business of retail merchant and liquor dealer; that he made demand on him for a license for carrying on the business of liquor dealer and retail merchant, and that he answered he did not owe any license because he sold only to hands employed by him on his plantation. This witness was not cross-examined.

Defendant's manager testified that there was no store on the plantation wherein merchandise was sold to any persons other than the plantation laborers; that supplies are sold only to the hands employed thereon; that he himself, and not the defendant, attended to the store; that several applications by persons who did not reside on the plantation were made for the sale of supplies, and that he positively refused to sell to any but those employed on the place; that the sales were restricted to the incidental supplies required by the laborers on the plantation; that no sales were made to any persons working on the levees who were not connected with the plantation; that there were about fifty-eight men employed on the plantation, with the exception of two or three men who are ditching on the place, who live at Little Rock; that all the rest reside on the plantation; that groceries in general were sold in the store, also liquors; that the profits are merely enough to pay the man for keeping the store, and the freight and general expenses of the store; that it was kept merely for the accommodation of the hands and not with a view of making any profits; that liquor was sold to no person other than those employed on the plantation; that the ditchers went to work every morning and remained until night; that the nearest public store to the plantation was two miles off.

The defendant on appeal claims that under these pleadings and evidence the judgment of the District Court should be reversed. He relies greatly on the case of Luling vs. Labranche, reported in 30 An. 973, and asserts that there is a difference between his position and that of Diamond, the defendant in the case of Thibaut vs. Diamond, 37 An. 902, in this, that it was shown that in the Diamond store sales were made to outsiders, whereas the evidence in this case establishes the fact that he dealt exclusively with his employees.

For the purposes of his case we will assume this last statement to be correct, and examine the defendant's rights on that theory.

We have referred to Act No. 123 of 1866 (p. 236) and to Act No. 89 of 1868 (p. 119) alluded to in 30 An. 973, and find that the former act was an act entitled "An act to authorize planters and farmers to furnish their freedmen and other employees with articles of merchandise without incurring the penalties of retail merchants," and that it was evidently passed to *exempt planters and farmers* so dealing with their employees from the operation (under which they would otherwise fall) of the existing general law *by which retail merchants were required to pay a license,* and we also find that Act No. 89 of 1868 was entitled "An act to repeal an act entitled an act to authorize planters to furnish their freedmen and other employees with articles of merchandise without incurring the penalty of retail merchants, approved March 26, 1866," and that it reads as follows:

" Whereas the act of the Legislature the title of which is set forth in the title of the present Act 15 is against the interest of the laborer and an act of injustice to the paying storekeeper, be it enacted, etc., that the same be repealed."

It is conceded in the case of Luling vs. LaBranche that the passage of Act No. 123 of 1866 is a clear legislative interpretation of the words " retail merchant " in the antecedent license law, and that but for the act of 1866 merchants and farmers furnishing their employees with supplies would fall under the terms of the revenue act, and that the second act was intended to deprive the planters who thus sold of the benefit of the latter statute, but the court goes on to declare that the effect of this repeal is to leave " the question as a judicial one," since the " designation of a class would then appear in the revenue act without any explanatory or qualifying interpretation elsewhere."

We think the court was mistaken in saying that the farmers and planters mentioned were exempted from license as retail merchants simply by a " declaration " in the act of 1866 that they did not fall under the definition of the words " retail merchant." They were exempted by force of a direct affirmative exemption, one which the court rightly declared inconsistent with their being not held by a license before. We think the court was also mistaken in saying that when the exemption law was repealed it left the meaning of

the words "retail merchants" a judicial question without any *explanatory or qualifying interpretation elsewhere.*

We do not see how the repealing of an "exemption" law, when the repealing statute assigns as a reason for the repeal that the further continuance of the exemption was against *the interests of laborers and an injustice to tax-paying storekeepers,* could be *held to bring about the very reverse of what the repealing act declared to be its purpose.* We do not think the matter was "set at large" by this repeal, but that the original legislative interpretation of the words gained, on the contrary, additional strength thereby. It was the *exemption* and not the *interpretation* which was repealed.

We are of the opinion that the words of the present law, that a license is exacted for any business of selling at retail," reach the case of the defendant, both under legislative and judicial construction, and that he is liable as claimed by the plaintiff. To construe the law otherwise would be to place it outside the rule of equality and uniformity.

Defendant's manager testifies that the store on defendant's plantation was not kept with a view of profit; that the profits are merely enough to pay the man for keeping the store and the freight and general expenses of the store. The motive which the defendant might have in keeping the store on his place is not the controlling factor in the case.

We think the preamble of the repealing act of 1868 is as applicable now as it was then, and that it would be "against the interests of the laborers and an injustice to the tax-paying storekeepers" to sustain defendant's position, and we have no reason to believe that the Legislature has changed its views on that subject.

The conclusions we have reached do away with the necessity of an examination of the question raised in defendant's brief, as to whether a liquor license was demandable of him unless and until it had been determined that he was a retail merchant, his claim being that he would be only liable as a liquor dealer when it should have been established that he sold liquors in connection with business as a retail merchant.

We understand the defendant to contend in his brief that, granting his liability to pay a license, there is not sufficient evidence in the record to justify a judgment of the amount which he has been condemned to pay. There are several reasons why we can not

accede to his views. It was defendant's duty, if liable, to have gone forward and demanded a license at the beginning of the year, presenting an exact statement of his situation. Not only did he fail to do this, but when applied to for payment he, without contesting the amount claimed, denied, as he still denies, all liability. Not only has he not pleaded that he was " overcharged," but when plaintiff, in connection with the demand set up by him, testified that he knew defendant to be a retail merchant and liquor dealer, defendant failed to take the stand as a witness. If he was overcharged, he was better informed and better able to show that fact than any one else and he should have done so after his default.

For the reasons herein assigned, it is ordered, adjudged and decreed that the judgment of the District Court be and the same is hereby affirmed.

### DISSENTING OPINION.

FENNER, J. This claim is for a license under the license act of 1890, and under that clause of the act which levies a license on the " business of *selling at retail*," or, as elsewhere designated in the act, the business of "*retail merchant*."

Under a like statute imposing a license on "retail merchants," or, as otherwise described, "for keeping a retail store," this court held:

"A person whose business or avocation is that of planter or manufacturer, and who keeps in store only such goods and wares as his employés require, and who sells to them alone and not to the general public, and who sells, not as a retail dealer does, exclusively for the profit, but only as an advance to his laborers and an incident to his main business, and to promote its better administration, is not a retail dealer within the meaning of the revenue act, and the tax or license imposed upon that class of persons by that act is not legally demandable from him." Luling vs. LaBranche, 30 An. 972.

This case was substantially affirmed in a later decision, where the court referred to it and said: "Granting that the law, as it now stands, would not justify the exaction of a license where sales from a plantation store were confined strictly to the laborers on the place, still where this restriction is not observed," etc. Thibaut vs. Diamond, 37 An. 902.

The first decision was rendered in 1878, fourteen years ago. The Legislature has passed numerous license laws since that date, in any of which it was perfectly competent to subject to license plantation

stores selling exclusively to their own laborers, by express descrip-
tion, but instead of doing so, it continued to employ the same gen-
eral words which had been held by this court not to include such
stores.

It is conceded that defendant in this case keeps a plantation store
and sells exclusively to his laborers and employees.

He, and the thousands of planters in like case, had the right to
suppose that they could conduct such business without subjecting
themselves to license underthe interpretation placed on the statutes
by this court, which he was authorized and bound to accept.

If we now reverse these decisions all planters who have conducted
such business will find themselves liable for licenses for all years
within the prescriptive term.

If there was error in these decisions it has been condoned by sub-
sequent legislative acquiescence.

And, independently of this, it furnishes the strongest possible case
for application of the rule of *stare decisis*.

As said by Mr. Sutherland in his very recent work on the subject:
"A judicial construction of a statute becomes a part of it, and as to
rights which accrue afterward, it should be adhered to for the pro-
tection of those rights. To divest them by a change of the construc-
tion is to legislate retroactively." Suth. Stat. Const., Sec. 319.

So far as contract rights acquired on the faith of such adjudications
are concerned, the Supreme Court of the United States has held:
"After a statute has been settled by judicial construction, the con-
struction becomes, so far as contract rights under it are concerned,
as much a part of the statute as the text itself, and a change of de-
cision is to all intents and purposes the same in its effect on con-
tracts as an amendment of the law by legislative enactment."
Douglas vs. Pike, 101 U. S. 677.

No reason can be given for a distinction between contract rights
and other rights acquired in good faith by action on the faith of such
construction.

If, instead of a license, it were a criminal penalty resulting to
defendant from our change of decision, he would undoubtedly be
protected by the constitutional inhibition against *ex post facto* laws.

" Whatever might be our impressions, were the matter *res integra*,
we deem it important in the construction of statutes to adhere to
what has already been adjudged. The judicial interpretation be-

comes, as it were, a part of the statute, and should not be changed but for most cogent reasons." State vs. Thompson, 10 An. 122.

" A cardinal rule in dealing with written instruments is that they are to receive an unvarying ·interpretation and that their practical construction is to be uniform. A constitution is not to be made to mean one thing at one time, and another at some subsequent time." Cooley Const. Lim., p. 67.

" As a general rule, and *particularly in regard to the construction of statutes*, courts adhere strictly to the decisions of their predecessors. 'Thirty-four years have nearly passed,' said Lord Kenyon, in construing a penal statute for the observance of the Lord's day, ' since the decision in Rex vs. Cox, which informed the public that all bakers have a right to do what is imputed to this defendant as an offence. This circumstance alone should have weight in the determination of this case,' and the words being doubtful, the original decision was adhered to." Sedgwick Stat. Const., p. 215.

" There are many questions upon which there is no objection to a change of decision other than grows out of those general considerations which favor certainty and stability in the law. There are questions where the decisions did not constitute a business rule, and where a change would invalidate no business transactions conducted upon the faith of the first adjudication. * * * But where a decision relates to certain modes of doing business, which business enters largely into the transactions of the people of a State, and a change of decision must invalidate everything done in the mode prescribed by the first, when a decision has once been made and acted on for any considerable length of time, the maxim becomes imperative and no court is at liberty to change." Sutherland Stat. Const., Sec. 317.

The fact that this is a different statute from the one first construed does not affect the case. It is a statute on the same subject matter, using the same language to express the same meaning, and every one had the right to suppose it continued to have the same meaning and effect which the first decision determined it had. The fact that the Legislature did not change the language, signified its acquiescence in the construction given, and thus powerfully reinforces the reasons. for applying the maxim.

I find nothing in the change of Constitutions of the State having any bearing on the case.

I am, therefore, compelled to dissent.

### DISSENTING OPINION.

BREAUX, J.   I have no dissent to express from the interpretation of the statute in said case, as stated by the majority of the court.

The decisions of this court heretofore unreversed formed the law, and entered into the body of precedents. The ruling in making the change might, for the purpose of settling all questions, embrace the possible issues as to whether any demand can be made for previous years for amount and penalty.

The implied guarantee of the State not to disturb past final settlements, under existing precedents, are questions which may now be decided, and thereby add to the certainty and security of judicial interpretation.